# In the United States Court of Federal Claims

No. 19-52T
(Filed:  August 30, 2019)

*************************************

| | |
|---|---|
| MARY WOLFFING,                           * | |
|                     * | Pro Se Plaintiff; RCFC 12(b)(1); RCFC |
|           Plaintiff,       * | 12(b)(6); Tax Refund Suits; Claims |
|                     * | Against Individuals; Fraud; Due Process; |
|    v.                   * | Illegal Collection; Tax Court Jurisdiction; |
|                     * | Flora Full Payment Rule; |
| THE UNITED STATES,        * | I.R.C. §§ 6020(b), 6511(b)(2)(A), 6402(a), |
|                     * | 6513(b)(1), 6532(a), 7422(a) |
|          Defendant.      * | |

*************************************

Mary Wolffing, Williston, VT, pro se.

Margaret E. Sheer, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

     In this case, pro se plaintiff Mary Wolffing alleges that Internal Revenue Service ("IRS") employees committed fraud by preparing substitutes for return on her behalf for several tax years.  Ms. Wolffing further alleges that IRS collection activities with respect to those returns also constitutes fraud.  According to Ms. Wolffing, the dismissal of her complaint in the United States Tax Court ("Tax Court") for lack of subject-matter jurisdiction demonstrates that the IRS acted beyond its authority.  She seeks redress for lost property, lost wages, and damage to her credit history in connection with those collection efforts.

     Defendant moves to dismiss Ms. Wolffing's complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which this court can grant relief.  For the reasons explained below, Ms. Wolffing's fraud, due process, and illegal collection claims are beyond the subject-matter jurisdiction of the United States Court of Federal Claims ("Court of Federal Claims").  Further, her tax refund claims are not properly before the court.  Accordingly, the court grants defendant's motion and dismisses the complaint.

# I. BACKGROUND

## A. Statutory and Regulatory Context

A United States citizen or resident with gross income above a certain amount in a taxable year is generally subject to tax and must file a tax return for that year. I.R.C. § 6012(a)(1) (1994). See generally Treas. Reg. § 1.6012-1 (1996). The due date for filing a tax return and paying any tax owed for a calendar-year individual taxpayer is April 15 of the following year. I.R.C. §§ 6072(a), 6151(a). Individuals may obtain an automatic six-month extension of the filing due date by submitting an application on or before the due date.[1] Treas. Reg. § 1.6081-4(a). If April 15 (or October 15, if filing under a valid extension) falls on a weekend or holiday, the due date is the next business day thereafter. I.R.C. § 7503. Congress has directed the IRS to prepare a substitute for return on behalf of an individual who fails to file a required tax return. See id. § 6020(b)(1). Such an individual is also potentially subject to civil or criminal penalties. See, e.g., id. §§ 6651(a)(1), 6651(f), 7203. In addition to failure-to-file (i.e., late filing) penalties, failure-to-pay (i.e., late payment) penalties and interest apply to any tax not paid by the original due date. Id. §§ 6601(a) (interest on underpayment of tax), 6651(a)(2) (late payment penalty).

Whether resulting from a taxpayer-filed return or an IRS-prepared substitute for return, the IRS has several tools at its disposal to collect unpaid taxes. There is an automatic statutory lien on all real and personal property of a delinquent taxpayer in the amount of any taxes that remain unpaid after the IRS issues a notice and demand for payment of such taxes. Id. § 6321. The IRS will often file a public notice of federal tax lien to place other potential interested parties (such as prospective purchasers, mortgagees, or creditors) on notice of the lien. Id. § 6323(a), (f). After establishing the existence of a tax lien, the IRS may then levy upon the delinquent taxpayer's property (whether or not a public notice of such lien is filed) by seizing and selling property or by garnishing wages. Id. § 6331(a)-(b); see also Treas. Reg. § 301.6331-1(a)(1) ("Levy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy, including receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation."). Besides garnishing wages, the IRS has the authority to direct employers to increase the taxes withheld from employee paychecks.[2] Treas. Reg. § 31.3402(f)(2)-1(g)(2).

---

[1] An extension of time to file a tax return is not an extension of time to pay any tax due with respect to that return. Treas. Reg. § 1.6081-4(c).

[2] Specifically, the IRS "may notify the employer in writing that the employee is not entitled to claim a complete exemption from withholding or more than the maximum number of withholding exemptions specified by the IRS in the written notice" and "specify the applicable marital status for purposes of calculating the required amount of withholding." Treas. Reg. § 31.3402(f)(2)-1(g)(2)(i). The employer must then begin withholding tax in accordance with the notice. Id. § 31.3402(f)(2)-1(g)(2)(v).

## B.  Factual History

Ms. Wolffing timely filed her 1996 tax return and received a refund on or about May 9, 1997.[3]  Def.'s Mot. App. ("DA") 120-21.[4]  Ms. Wolffing did not file another tax return until October 2017, when she filed her 2010 and 2013 through 2016 tax returns.  See id. at 90, 106, 109, 112, 115.  As of January 4, 2019, the date on which she initiated the instant lawsuit, her 2017 tax return remained unfiled, id. at 118, 122, and the due date for her 2018 tax return had not yet passed.

Because Ms. Wolffing stopped filing tax returns, the IRS, in June and July 2003, prepared substitutes for her 1999, 2000, and 2001 returns.  Id. at 20, 33, 40.  In 2004, the IRS prepared substitutes for Ms. Wolffing's 1997, 1998, 2002, and 2003 returns.  Id. at 8, 15, 47, 52.  In February 2008, the IRS prepared substitutes for Ms. Wolffing's 2004, 2005, and 2006 returns.  Id. at 55, 61, 67.  In 2010, the IRS prepared substitutes for Ms. Wolffing's 2007 and 2008 returns.  Id. at 72, 78.  Finally, the IRS prepared substitutes for Ms. Wolffing's 2009, 2011, and 2012 returns in 2011, 2013, and 2014, respectively.  Id. at 84, 94, 102.

All but one of those substitutes for return resulted in assessments of tax owed; the 2003 substitute for return (that was prepared in 2004) resulted in no tax due.  In addition, the 2010, 2015, and 2016 returns that Ms. Wolffing filed herself each reflected a balance due.  Her 2013 and 2014 returns, which she also filed herself, reflected overpayments of tax.  However, because she filed her 2013 tax return more than three years after the tax was deemed paid, she did not receive that refund.  Id. at 106; see Boeri v. United States, 724 F.3d 1367, 1369 (Fed. Cir. 2013) (relying on I.R.C. §§ 6511(b)(2)(A), 6513(b)(1)).  Ms. Wolffing's refund with respect to her 2014 return was credited towards the balance then outstanding for her 2005 tax year.  DA 63, 109.

The IRS assessed penalties and interest for the tax years in which Ms. Wolffing's returns reflected a balance due.  The IRS also engaged in various collection efforts to pursue the amounts that Ms. Wolffing owed.[5]  In addition to filing notices of federal tax lien and notices of levy beginning in late December 2004, the IRS pursued various levies:

---

[3]  The facts in this section—which are undisputed for the purpose of resolving defendant's motion to dismiss—derive from the complaint, the parties' submissions (including attached exhibits), and matters of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.  See Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325-26 (Fed. Cir. 2016).

[4]  Defendant filed three exhibits with its motion to dismiss.  Because the exhibits are paginated consecutively, rather than separately, the court refers to the exhibits as one appendix for the sake of simplicity and ease of reference.

[5]  Ms. Wolffing was also subject to collection activity for outstanding state income taxes.  See Compl. Ex. C at 2-6.

- August 24, 2009—wage garnishments; at the time, Ms. Wolffing owed a total of $171,188.22 for 1997 through 2006. Compl. Ex. B at 1.

- February 2, 2013—wage garnishments; at the time, Ms. Wolffing owed a total of $58,398.54 for 2007 through 2009. Compl. Ex. C at 19.

- August 8, 2016—wage garnishments; at the time, Ms. Wolffing owed a total of $108,687.92 for 2004 through 2009. Compl. Ex. C at 13.

- July 27, 2017—wage garnishments; at the time, Ms. Wolffing owed a total of $133,284.23 for 2004 through 2011. Compl. Ex. D at 1.

- August 17, 2017—bank account levy; at the time, Ms. Wolffing owed a total of $133,591.31 for 2004 through 2011. Compl. Ex. G at 1. The levy resulted in an aggregate seizure of $11,994.92 from two bank accounts. Id. at 3-4.

The amounts that the IRS collected pursuant to these actions (rounded to the nearest whole dollar) are as follows:[6]

| IRS Collection Amounts | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Tax Year | | | | | | | | |
| | | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 |
| Year in Which Collected | 2005 | | | $10,000 | | | | | | |
| | 2006 | | | $6,716 | | | | | | |
| | 2007 | | | | | | | | | |
| | 2008 | | | | | | | | | |
| | 2009 | $7,169 | | | | | | | | |
| | 2010 | $5,664 | | | | | | | | |
| | 2011 | | | | | | | | | |
| | 2012 | | | $25,799 | | | | | | |
| | 2013 | $1,321 | | $6,151 | $2,123 | $11,160 | | | | |
| | 2014 | $4,506 | $279 | | $12,270 | | | | $4,153 | |
| | 2015 | | | | | | | | $4,091 | |
| | 2016 | | | | | | | | $3,988 | |
| | 2017 | | | | | | | | $3,903 | $8,092 |

[6] The amounts collected for 2005 do not include the $2,076 refund transferred from the 2014 tax year on November 6, 2017 (retroactive to April 15, 2015). See DA 63, 109.

Through these collection efforts, Ms. Wolffing fully paid her taxes owed for 1997, 1999, 2001, and 2004. Her remaining tax liabilities for 1998 ($6,553.72), 2000 ($22,651.87), and 2002 ($5,916.46) were written off in 2014 as uncollectable since the ten-year statute of limitations on collection after assessment had expired. DA 16, 36, 48; see also I.R.C. § 6502(a)(1). Ms. Wolffing's remaining tax liabilities for 2005 ($9,325.70) and 2006 ($17,188.25, after having made no payments via collections or otherwise) were written off for the same reason on November 19, 2018. DA 63, 69. Thus, Ms. Wolffing has no remaining tax liabilities for the 1996 through 2006 tax years. However, after having made no payments (via collections or otherwise), she has outstanding tax liabilities for subsequent years as follows:

| Tax Year | Amount Owed |
|---|---|
| 2007 | $15,692.60 |
| 2008 | $20,268.59 |
| 2009 | $26,589.39 |
| 2010 | $28,142.87 |
| 2011 | $23,721.50 |
| 2012 | $33,824.79 |
| 2013 | $0.00 |
| 2014 | $0.00 |
| 2015 | $9,481.32 |
| 2016 | $13,739.22 |
| 2017 | No return filed |
| 2018 | Not yet due |
| **TOTAL** | **$171,460.30** |

Id. at 76, 82, 88, 92, 100, 104, 107, 110, 113, 116, 118, 122. In 2016 and 2017, the IRS deemed Ms. Wolffing to be in "hardship" status and abated certain penalties and interest; the balances shown in the table above reflect the amounts owed after those adjustments. E.g., id. at 86-88.

In addition to the various levies, the IRS issued notices to Ms. Wolffing's employer to withhold taxes from her wages at the "single" rate with zero allowances effective November 28, 2016. E.g., Compl. Ex. D at 9. The increased withholding rates were still in place in November and December 2018. Compl. Ex. K.

Meanwhile, Ms. Wolffing applied for a cash-out refinance mortgage loan on her primary residence with People's Trust Company of St. Albans. Compl. Ex. E at 1-2. Her loan application references an unspecified prior foreclosure.[7] Id. at 4; see also Compl. ¶ 3(b) (alleging

---

[7] Ms. Wolffing executed a thirty-year note and concomitant security instrument in the amount of $265,000 on June 6, 2002, that was to be repaid at an initial interest rate of 9.13%, adjustable every six months after the first two years. Compl. Ex. A, Wolffing v. Household Fin. Corp. II, No. 1:12-cv-00280-jgm (D. Vt. filed Dec. 18, 2012). In the latter portion of 2012, she filed multiple lawsuits and a bankruptcy petition seeking to halt the foreclosure of her primary residence; each of those actions was dismissed.

that "[a] house/property was lost" because of the "liens placed on [Ms. Wolffing's] credit report"). The trust company denied her application on June 27, 2014, due to the IRS collection actions and a prior bankruptcy. Compl. Ex. E at 1. Ms. Wolffing pursued refinancing again the following year, Compl. Ex. F, but the record does not reflect the results of that attempt.

On December 6, 2017, Ms. Wolffing filed suit in the Tax Court to dispute the Notices of Deficiency and Notices of Determination Concerning Collection Action for 1996 through 2017, inclusive. DA 2. In her Tax Court petition, Ms. Wolffing alleged that she "never received" any of those notices, and provided no further facts or argument. Id. at 2-3. The Tax Court dismissed Ms. Wolffing's petition, with her acquiescence, in its entirety for lack of subject-matter jurisdiction on July 30, 2018, for the following reasons:

- untimely with respect to 1997 through 2002, 2004 through 2006, 2009, and 2011;

- no Notice of Deficiency was issued with respect to 1996, 2003, 2007, 2008, 2010, and 2012 through 2017;

- no Notice of Determination Concerning Collection Action was issued with respect to 1996 through 2017; and

- the IRS had "not made any other determination with respect to tax years 1996 through 2017 that would confer jurisdiction on the [Tax Court]."[8]

Compl. Ex. A.[9]

## C. Procedural History

In her January 4, 2019 complaint filed in this court, Ms. Wolffing alleges that the IRS-prepared substitutes for return were fraudulent since I.R.C. § 6020(b) does not provide authority for the IRS to prepare substitutes for Form 1040, the form used by individual taxpayers; the IRS collection actions themselves were fraudulent because they were based on fraudulent acts, i.e., the substitutes for return; and the Tax Court's dismissal for lack of jurisdiction means that the IRS had no authority to engage in collection actions and thus violated her right to due process. Compl. ¶¶ 1(c), 3(a). She outlines various damages that she has

_____

[8] "Other determinations" that could potentially give rise to Tax Court jurisdiction over issues concerning an individual taxpayer include a Final Determination Not to Abate Interest, a Determination of Worker Classification, and a Notice of Determination Concerning Request for Relief from Joint and Several Liability. See DA 2 (copy of Tax Court petition).

[9] Exhibit A to Ms. Wolffing's complaint is a complete copy of Wolffing v. Comm'r, No. 25372-17, slip op. (T.C. July 30, 2018).

allegedly suffered, see id. ¶ 3(b)-(f), describes the liens and levies as "Counterfeit Securit[ies]," id. ¶¶ 3(f), 4, and asks that the Court of Federal Claims order the IRS to compensate her for "the total amount of the fraudulent, sham tax liens and levies," id. ¶ 4.

In lieu of answering Ms. Wolffing's complaint, defendant moves to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and failure to state a claim upon which this court can grant relief pursuant to RCFC 12(b)(6). Defendant contends that Ms. Wolffing has not filed an administrative claim for refund for 1996 through 2012 or 2014 through 2017; to the extent that she asserts a tax refund claim, Ms. Wolffing has not complied with the RCFC 9(m) pleading requirements; Ms. Wolffing has not fully paid her tax liabilities for 2007 through 2012, 2015, or 2016; Ms. Wolffing's claim for a 2013 refund is barred by the look-back provisions of I.R.C. § 6511(b); and Ms. Wolffing's claims for fraud and unauthorized collection action can only be heard in federal district court.

Briefing on defendant's motion to dismiss is now complete. Neither party requested oral argument, and the court deems it unnecessary. Defendant's motion is now ripe for adjudication.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of [her] complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from her burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

### B. Standards of Review

#### 1. RCFC 12(b)(1)

With respect to a motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, that the court possesses subject-matter jurisdiction. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). In determining whether subject-matter jurisdiction exists, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Id. However, the court is not limited to the

pleadings in considering subject-matter jurisdiction. <u>Banks</u>, 741 F.3d at 1277; <u>Pucciariello v. United States</u>, 116 Fed. Cl. 390, 400 (2014). If the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

## 2. RCFC 12(b)(6)

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief. <u>Lindsay v. United States</u>, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle [her] to a legal remedy."). To survive an RCFC 12(b)(6) motion to dismiss, a plaintiff must include in her complaint "enough facts to state a claim to relief that is plausible on its face" sufficient for the defendant to have "fair notice" of the claim and the "grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted). In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). In ruling on such a motion, the court must "accept as true all of the factual allegations contained in the complaint" and any attachments thereto. <u>Erickson</u>, 551 U.S. at 94 (citing <u>Twombly</u>, 550 U.S. at 555-56); <u>accord</u> RCFC 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); <u>Rocky Mountain Helium, LLC v. United States</u>, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (applying RCFC 10(c) and emphasizing that "a court 'must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'" (quoting <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007))).

## C. Subject-Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998). Subject-matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006) (quoting <u>United States v. Cotton</u>, 535 U.S. 625, 630 (2002)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." <u>Ex parte McCardle</u>, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." <u>Matthews v. United States</u>, 72 Fed. Cl. 274, 278 (2006); <u>accord</u> <u>K-Con Bldg. Sys., Inc. v. United States</u>, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015).

Either party, or the court <u>sua sponte</u>, may challenge the court's subject-matter jurisdiction at any time. <u>Arbaugh</u>, 546 U.S. at 506; <u>see also</u> <u>Jeun v. United States</u>, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases). The court must examine all pertinent issues relevant to subject-matter jurisdiction because "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 94 (2010); <u>accord</u> <u>Gonzalez v. Thaler</u>, 565 U.S. 134, 141 (2012) ("When a requirement goes to

subject-matter jurisdiction, courts are obligated to consider <u>sua sponte</u> issues that the parties have disclaimed or have not presented.").

### D.  The Tucker Act

The ability of the Court of Federal Claims to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued." <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941).  The waiver of immunity "may not be inferred, but must be unequivocally expressed."  <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 472 (2003).  The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1) (2012); <u>White Mountain</u>, 537 U.S. at 472.  However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." <u>United States v. Testan</u>, 424 U.S. 392, 298 (1976).  Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States."  <u>Loveladies Harbor, Inc. v. United States</u>, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

### E.  Tax Refund Suits

Congress has granted the Court of Federal Claims the authority to entertain tax refund suits.  28 U.S.C. § 1346(a)(1); <u>United States v. Clintwood Elkhorn Mining Co.</u>, 553 U.S. 1, 4 (2008).  To bring a tax refund suit in this court, a plaintiff must:

- make full payment of its tax liabilities, <u>Flora v. United States</u>, 362 U.S. 145, 177 (1960); <u>Diversified Grp. Inc. v. United States</u>, 841 F.3d 975, 981 (Fed. Cir. 2016);

- file a timely claim for refund with the IRS, I.R.C. § 7422(a); and

- file a timely complaint after the refund claim is denied or deemed denied, I.R.C. § 6532(a).

Further, plaintiffs filing a tax refund suit in this court must include the following with the complaint:

> (1) a copy of the claim for refund, and
>
> (2) a statement identifying:
>
>> (A) the tax year(s) for which a refund is sought;
>>
>> (B) the amount, date, and place of each payment to be refunded;
>>
>> (C) the date and place the return was filed, if any;
>>
>> (D) the name, address, and identification number (under seal) of the taxpayer(s) appearing on the return;
>>
>> (E) the date and place the claim for refund was filed; and
>>
>> (F) the identification number (under seal) of each plaintiff, if different from the identification number of the taxpayer.

RCFC 9(m).

## III.  ANALYSIS

In her complaint, Ms. Wolffing alleges that the IRS and its employees engaged in fraud and violated her right to due process, the IRS collection actions are illegal, and the IRS owes her refunds of amounts collected.  In response to defendant's motion to dismiss, Ms. Wolffing describes the federal taxation system as "immoral" and emphasizes that she has "conscientiously objected for many years" to participation therein.  Pl.'s Resp. 5.  The Court of Federal Claims lacks subject-matter jurisdiction to entertain most of Ms. Wolffing's claims.  To the extent that the court has such jurisdiction, Ms. Wolffing fails to state a claim upon which this court can grant relief.

### A.  The United States Is the Only Proper Defendant in the Court of Federal Claims

Ms. Wolffing alleges that "contractors/agents for the United States" have engaged in fraudulent and illegal activities; she specifically names two IRS revenue officers who issued levies on her wages and four IRS attorneys referenced in her Tax Court case.  Compl. ¶¶ 1(a), 1(c), 3(a); Compl. Ex. A1 at 6; Compl. Ex. B at 1; Compl. Ex. D at 1.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).  When a government official commits an illegal act, that act cannot be attributed to the

government because government officials have no authority to violate the law. Therefore, by alleging illegal conduct by certain government officials, Ms. Wolffing necessarily sues those actors in their individual capacities, not their official capacities.

However, in the Court of Federal Claims, "the <u>only</u> proper defendant . . . is the United States, not its officers, nor any other individual." <u>Stephenson v. United States</u>, 58 Fed. Cl. 186, 190 (2003); <u>accord</u> RCFC 10(a). Because "the United States itself" is the only proper defendant in the Court of Federal Claims, this court lacks jurisdiction over claims alleged against "individual federal officials," <u>Brown v. United States</u>, 105 F.3d 621, 624 (Fed. Cir. 1997), as well as "states, localities, state and local government entities, or state and local government officials and employees," <u>Anderson v. United States</u>, 117 Fed. Cl. 330, 331 (2014). Similarly, the Court of Federal Claims lacks jurisdiction "over suits against private parties." <u>Edelmann v. United States</u>, 76 Fed. Cl. 376, 380 (2007). In other words, "if the relief sought [in the Court of Federal Claims] is against other than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court." <u>Sherwood</u>, 312 U.S. at 584.

Accordingly, to the extent that Ms. Wolffing complains of improper conduct by parties other than the United States federal government, this court lacks jurisdiction over those claims, and they must be dismissed.

## B. The Court of Federal Claims Lacks Jurisdiction Over Ms. Wolffing's Fraud Claim

To the extent that Ms. Wolffing seeks relief in this court based on alleged tortious conduct, the Court of Federal Claims lacks jurisdiction. 28 U.S.C. § 1491(a)(1); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1343 (Fed. Cir. 2008).

Claims of fraud sound in tort.[10] <u>See, e.g.</u>, <u>Lawrence Battelle, Inc. v. United States</u>, 117 Fed. Cl. 579, 585 (2014). Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680, jurisdiction over tort claims against the United States lies exclusively in federal district courts. <u>U.S. Marine, Inc. v. United States</u>, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013). The Court of Federal Claims is not a federal district court. <u>Ledford v. United States</u>, 297 F.3d 1378, 1382 (Fed. Cir. 2002); <u>see also</u> <u>Lightfoot v. Cendant Mortg. Corp.</u>, 137 S. Ct. 553, 563 (2017) (distinguishing between the "Court of Federal Claims" and "federal district courts"). Therefore, "[w]here the adjudication of a type of claim has been granted to the district courts exclusively, [the Court of Federal Claims] has no jurisdiction to hear the case and must dismiss the matter."[11] <u>Ross v. United States</u>, 122 Fed. Cl. 343, 348 (2015).

_____

[10] To the extent that the fraud alleged by Ms. Wolffing can be construed as a criminal act, the Court of Federal Claims similarly lacks jurisdiction. <u>See</u> <u>Hufford v. United States</u>, 87 Fed. Cl. 696, 702 (2009) (collecting cases).

[11] Ms. Wolffing argues that "actions taken by the United States in fraud are a Constitutional violation under the Fifth Amendment" and therefore the Court of Federal Claims may "order recoupment of all monies taken under the fraud as a constitutional violation subject to this Court's jurisdiction." Pl.'s Resp. 12. "It is undisputed that the Takings Clause of the

-11-

In any event, Ms. Wolffing's fraud claim fails on the merits. Ms. Wolffing maintains that the IRS-prepared substitutes for return, and accordingly the collection efforts based on those returns, constituted fraud because I.R.C. § 6020(b) does not give IRS officers the authority to prepare substitutes for Form 1040 returns. She is mistaken. Congress has given the IRS the authority to prepare substitutes for return for "any return required by any internal revenue law or regulation" when the return is not filed. I.R.C. § 6020(b)(1) (emphases added). As relevant here, the internal revenue regulations provide that individuals required to file tax returns generally must do so on Form 1040.[12] Treas. Reg. § 1.6012-1(a)(6). Further, those regulations contain specific procedures for the IRS to prepare substitutes for return, and those procedures include explicit references to income taxes for individuals. See id. § 301.6020-1(b). Therefore, contrary to Ms. Wolffing's assertions, the authority to prepare substitutes for return pursuant to I.R.C. § 6020(b) extends to Form 1040. Cf. Rader v. Comm'r, 143 T.C. 376, 382-83 (2014) (discussing the sufficiency of substitutes for return, in lieu of Form 1040, prepared by the IRS pursuant to I.R.C. § 6020(b)).

Ms. Wolffing also relies on the Tax Court's dismissal of her 2017 lawsuit for lack of jurisdiction to support her argument that the IRS lacked authority to prepare substitutes for return and to pursue collection efforts. This argument reflects a fundamental misunderstanding of the Tax Court's July 30, 2018 dismissal order. In that order, the Tax Court considered whether there were any grounds "that would confer jurisdiction on the [Tax Court]" to examine Ms. Wolffing's petition. Compl. Ex. A (emphasis added); see also DA 2-3 (petition). In other words, as defendant observes, the Tax Court was only concerned with its own ability to entertain Ms. Wolffing's claims for relief—not whether the IRS had the requisite authority to pursue collection efforts.

---

Fifth Amendment is a money-mandating source [of law] for purposes of Tucker Act jurisdiction" in the Court of Federal Claims. Jan's Helicopter Serv., Inc. v. FAA, 525 F.3d 1299, 1309 (Fed. Cir. 2008). However, it is well understood that a court must "look to the true nature of the action instead of merely relying on the plaintiff's characterization of the case" in "determining the existence and grounds for [its] jurisdiction." Doe v. United States, 372 F.3d 1308, 1315 (Fed. Cir. 2004). Here, Ms. Wolffing asserts a fraud claim, not a takings claim. In any event, to prevail on a takings claim under the Tucker Act, a plaintiff must concede the legitimacy of the government action that effected the taking. Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1332 (Fed. Cir. 2012). By asserting that her purported takings claim arises from fraud, as well as "[u]nlawful seizure," Pl.'s Resp. 26, Ms. Wolffing does not concede the legitimacy of the alleged taking. Therefore, to the extent that Ms. Wolffing asserts a takings claim, she cannot prevail, and the claim must be dismissed.

[12] Some individuals qualify to file tax returns using Form 1040A, which is "an optional short form" version of Form 1040. Treas. Reg. § 1.6012-1(a)(6). But see I.R.S. News Release IR-2019-07 (Jan. 28, 2019) (describing a "redesigned" Form 1040 that "consolidates Forms 1040, 1040A, and 1040EZ into one form that all individual taxpayers will use to file their 2018 federal income tax return"). In addition, certain individuals required to file a tax return must do so using Form 1040NR. Treas. Reg. § 1.6012-1(b)(1)(i).

In Wall v. United States, the plaintiff advanced the same argument that Ms. Wolffing advances here, i.e., that the Tax Court's dismissal for lack of jurisdiction meant that the IRS lacked the authority to enforce its liens.  141 Fed. Cl. 585, 589-90 (2019).  Another judge of this court soundly rejected that argument, and explained that the Tax Court's dismissal order stood for the proposition that "the Tax Court lacked jurisdiction over plaintiff's petition, which was, at that time, pending before the Tax Court, not that the IRS lacked the ability to place liens on plaintiff's assets."  Id. at 597.  The Wall decision is directly on point.  In the instant case, the Tax Court's dismissal of Ms. Wolffing's petition similarly had no bearing on the IRS's authority to pursue collection of her unpaid taxes through substitutes for return, liens, levies, and increased withholding.  Accordingly, Ms. Wolffing's characterization of the import of the July 30, 2018 Tax Court decision is unavailing.

In sum, the Court of Federal Claims lacks subject-matter jurisdiction to consider Ms. Wolffing's fraud claims.  To the extent that the court has such jurisdiction, Ms. Wolffing fails to state a claim upon which this court can grant relief because the IRS has the authority to prepare substitutes for return and issue liens, levies, and notices of increased withholding.

## C.  The Court of Federal Claims Lacks Jurisdiction Over Ms. Wolffing's Due Process Claim

Ms. Wolffing also asserts that the IRS violated her procedural due process rights by the manner in which it pursued collection of back taxes.  However, it is "well settled" that the Due Process Clause of the Fifth Amendment is not money-mandating.  Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)).  As stated above, the Court of Federal Claims lacks jurisdiction over claims that are "not tied to money-mandating sources of law."  Ivaldy v. United States, 655 F. App'x 813, 815 (Fed. Cir. 2016) (unpublished per curiam decision).  Therefore, Ms. Wolffing's due process claim is beyond the jurisdiction of this court.  Accord Wall, 141 Fed. Cl. at 598.

## D.  The Court of Federal Claims Lacks Jurisdiction Over Ms. Wolffing's Illegal Collection Claim

In addition to asserting fraud and due process claims, Ms. Wolffing contends that the IRS engaged in illegal collection actions.

The Internal Revenue Code permits taxpayers to bring lawsuits when "any officer or employee of the [IRS] recklessly or intentionally, or by reason of negligence, disregards any provision of [the Internal Revenue Code], or any regulation promulgated [thereunder]" in connection with federal tax collection.  I.R.C. § 7433(a).  However, such actions may only be brought in federal district court.  Id.  Since the Court of Federal Claims is not a federal district court, Ledford, 297 F.3d at 1382, Ms. Wolffing cannot maintain her illegal collection claim here.  Accord Russell v. United States, 78 Fed. Cl. 281, 287 (2007).  In any event, Ms. Wolffing has not plausibly alleged that any IRS officials disregarded any law or regulation with respect to the IRS's collection efforts.

Ms. Wolffing also implicitly invokes I.R.C. § 7426 as a basis for this court's subject-matter jurisdiction. Under that section, a person whose property is wrongfully levied may bring an action against the federal government to contest the levy. I.R.C. § 7426(a)(1). However, such an action may only be brought in federal district court. Id. Therefore, the Court of Federal Claims lacks subject-matter jurisdiction to entertain a wrongful levy action. Further, wrongful levy actions may only be maintained by persons "other than the person against whom is assessed the tax out of which such levy arose," id., because a wrongful levy is a levy in which the IRS seizes property that does not belong to the taxpayer, Cherbanaeff v. United States, 77 Fed. Cl. 490, 496 (2007). Here, Ms. Wolffing's property was seized to offset her own tax liabilities. Therefore, she lacks standing to bring a wrongful levy action, even in federal district court. Taxpayers who seek to recover funds that were levied to satisfy their own tax liabilities, such as Ms. Wolffing, must file a refund claim rather than a wrongful levy claim.

Finally, the Anti-Injunction Act prevents, with exceptions not relevant here, taxpayers from maintaining suits against the IRS "in any court" to enjoin tax assessment or collection activity. I.R.C. § 7421(a) (emphasis added). In other words, the Act "generally bars pre-enforcement challenges to certain tax statutes and regulations" and instead requires taxpayers to "raise such challenges in refund suits after the tax has been paid."[13] Fla. Bankers, 799 F.3d at 1066. Thus, Ms. Wolffing cannot ask the Court of Federal Claims, or any other court, to enjoin the IRS from assessing and collecting taxes.

Accordingly, the Court of Federal Claims lacks jurisdiction to entertain Ms. Wolffing's illegal collection claim.

### E.  Ms. Wolffing's Tax Refund Claims Must Be Dismissed

In addition to her other claims, the court construes the allegations in Ms. Wolffing's pro se complaint as tax refund claims with respect to the 1996 through 2017 tax years. See Compl. ¶ 1(b)-(c). However, none of these claims is properly before this court.

### 1.  Ms. Wolffing Has Not Fully Paid Her Tax Liabilities for 1998, 2000, 2002, 2006–2012, and 2015–2017

The first requirement for the Court of Federal Claims to have subject-matter jurisdiction over a tax refund claim is for the taxpayer to make full payment of her tax liabilities for the year(s) at issue. However, a taxpayer need not pay the penalties and interest arising from the principal balance of those liabilities unless she also "assert[s] a claim over assessed interest or penalties on grounds not fully determined by the claim for recovery of principal." Shore v. United States, 9 F.3d 1524, 1527-28 (Fed. Cir. 1993). Thus, for example, a claim for abatement of penalties and interest can be maintained without payment of the penalties and interest if the

---

[13]  Taxpayers can also raise such challenges in deficiency proceedings before the Tax Court without prepayment, assuming that the requirements for asserting Tax Court jurisdiction are met. Fla. Bankers Ass'n v. U.S. Dep't of the Treasury, 799 F.3d 1065, 1066 (D.C. Cir. 2015).

theory for such abatement is that the underlying principal tax assessment, which was fully prepaid prior to filing suit, was in error.  However, if the claim for abatement of penalties focuses on another reason (such as reasonable cause) rather than the underlying tax liability, then those penalties must be prepaid.

Ms. Wolffing does not advance any particular theory for return of the penalties and interest that the IRS assessed against her.  The court therefore construes her claim for refund of penalties and interest to be based wholly on the underlying principal tax liabilities.  Accordingly, whether Ms. Wolffing has complied with the Flora full payment rule with respect to a particular tax year is properly determined based on whether she has fully paid the principal tax assessment for that year, regardless of whether she has fully paid the concomitant penalties and interest.

Ms. Wolffing has fully paid her taxes for 1996, 1997, 1999, 2001, 2003, 2004, 2013, and 2014.  She filed returns showing refunds due for 1996, 2013, and 2014.  The IRS substitute for return for 2003 reflects no refund or balance owed.  Further, Ms. Wolffing fully paid her taxes through levy payments for 1997, 1999, 2001, and 2004.

Next, Ms. Wolffing's tax records show zero balances owed for 1998, 2000, 2002, 2005, and 2006, due to the IRS writing off the remaining balances.  The principal tax assessment (i.e., exclusive of penalties and interest) and total payments (through withholding and subsequent levies) for each of these years—before the IRS wrote off the remaining balance—are as follows:

| Year | Principal | Withholding | Levies | Total Payments |
|------|-----------|-------------|--------|----------------|
| 1998 | $9,219 | $5,886 | $279 | $6,165 |
| 2000 | $21,857 | $992 | $14,393 | $15,385 |
| 2002 | $4,007 | $306 | $0 | $306 |
| 2005 | $11,955 | $3,748 | $10,168[14] | $13,916 |
| 2006 | $10,864 | $3,214 | $0 | $3,214 |

Thus, with respect to the tax years shown in this table, Ms. Wolffing has only fully paid the principal balance of her 2005 taxes.

Further, Ms. Wolffing currently has outstanding tax liabilities for 2007 through 2012, 2015, and 2016.  Her payments made through withholdings are less than the principal tax assessment for each of these years (whether the returns were submitted by Ms. Wolffing or prepared by the IRS), and she has made no further payments.  Accordingly, she has not fully paid her tax liabilities for 2007 through 2012, 2015, and 2016.

---

[14]  The $10,186 collected towards Ms. Wolffing's 2005 tax liability reflects $8,092 seized from her bank account and the $2,076 refund applied from her 2014 return, both of which took place in 2017.

Finally, as of the date on which she filed her complaint in the instant case, Ms. Wolffing had not filed her 2017 tax return.  Therefore, she has failed to establish that she has fully paid her tax liabilities for 2017.

In sum, Ms. Wolffing has fully paid her tax liabilities for 1996, 1997, 1999, 2001, 2003 through 2005, 2013, and 2014.  She has not fully paid her tax liabilities for 1998, 2000, 2002, 2006 through 2012, and 2015 through 2017.  Accordingly, the court lacks jurisdiction to entertain her tax refund claims for 1998, 2000, 2002, 2006 through 2012, and 2015 through 2017.

## 2.  Ms. Wolffing Did Not File Timely Refund Claims for 1997–2012 and 2015–2017

The second requirement for the Court of Federal Claims to have subject-matter jurisdiction over a tax refund claim is for the taxpayer to file a timely claim for refund with the IRS.  Ms. Wolffing does not allege, nor do IRS records demonstrate, that she has effected any filings with the IRS of any sort other than her tax returns for 1996, 2010, and 2013 through 2016.

A tax return—whether original or amended—can constitute an administrative claim for refund if the return contains "sufficient data to allow calculation of tax."  Waltner v. United States, 679 F.3d 1329, 1333 (Fed. Cir. 2012) (citing Treas. Reg. § 301.6402-3(a)(5)).  In other words, the return will suffice for a refund claim if it shows "an honest and genuine endeavor to satisfy the law."  Id. (quoting Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180 (1934)).  The court assumes (without deciding) that the tax returns filed by Ms. Wolffing meet these requirements.  However, only the 1996, 2013, and 2014 returns constituted claims for refund because they were the only returns on which Ms. Wolffing showed payments in excess of tax liabilities.  Indeed, her 2010, 2015, and 2016 returns showed balances due and thus cannot constitute claims for refund.[15]

To be timely, a plaintiff must file her refund claim "within 3 years from the time the return was filed or 2 years from the tax the tax was paid, whichever of such periods expires the later."[16]  I.R.C. § 6511(a).  When a refund claim is included on an original tax return, it will always be timely because the refund claim is filed simultaneously with (i.e., less than three years later than) the tax return.  Accordingly, Ms. Wolffing filed timely refund claims for 1996, 2013, and 2014.

---

[15]  The court need not opine on whether substitutes for return prepared by the IRS can constitute claims for refund because none of the substitutes for return that the IRS prepared on Ms. Wolffing's behalf showed payments in excess of tax liabilities.

[16]  If "no return was filed by the taxpayer," a refund claim is timely if it is filed "within 2 years from the time the tax was paid."  I.R.C. § 6511(a).

In sum, the court lacks jurisdiction to consider Ms. Wolffing's tax refund claims for 1997 through 2012 and 2015 through 2017 because she has not filed a timely refund claim with the IRS for those years.

### 3. Ms. Wolffing Filed a Timely Complaint With Respect to 2013 and 2014

The final requirement for the Court of Federal Claims to have subject-matter jurisdiction over a tax refund claim is for the taxpayer to file a timely complaint after the refund claim is denied or deemed denied. To be timely, a plaintiff must file her complaint within two years after the IRS denies her refund claim.[17] I.R.C. § 6532(a)(1). Because Ms. Wolffing only filed timely refund claims concerning 1996, 2013, and 2014, the court need consider the timeliness of her complaint as it pertains to those years only.

With respect to the 1996 tax year, the IRS neither denied Ms. Wolffing's claim (even in part) nor failed to act on her claim. Indeed, the IRS granted Ms. Wolffing's refund claim in full on or about May 9, 1997, when it issued a refund. Ms. Wolffing therefore cannot demonstrate an essential prerequisite for the exercise of this court's jurisdiction: that the IRS denied her refund claim. To the extent that the court has jurisdiction over her tax refund claim for 1996, Ms. Wolffing has already received all of the relief to which she is entitled, and therefore she fails to state a claim upon which this court can grant relief. See Lindsay, 295 F.3d at 1257.

With respect to the 2013 tax year, the IRS formally disallowed Ms. Wolffing's refund claim on June 11, 2018, when it determined that she had filed her tax return more than three years after the date on which the tax was deemed paid and thus she was not entitled to a refund. Ms. Wolffing initiated the instant lawsuit on January 4, 2019. Because she filed suit less than two years after the IRS denied her timely refund claim, the court has jurisdiction to consider Ms. Wolffing's tax refund claim for 2013.

With respect to the 2014 tax year, the IRS effectively disallowed her claim on November 6, 2017, when it transferred the full amount of her refund to her 2005 tax year (albeit with an April 15, 2015 effective date to reflect when the tax was deemed paid). Ms. Wolffing initiated the instant lawsuit on January 4, 2019. Because she filed suit less than two years after the IRS denied her claim, the court has jurisdiction to consider Ms. Wolffing's tax refund claim for 2014.

In sum, the court lacks jurisdiction to consider Ms. Wolffing's tax refund claim for 1996. The court does, however, have jurisdiction to consider her refund claims for 2013 and 2014.

---

[17] A refund claim is deemed denied if the IRS fails to act on the claim within six months after the claim is filed. Treas. Reg. § 301.6532-1(a)(1). In that scenario, a plaintiff can file suit at any time after the six-month period expires. Id.

**4.  Ms. Wolffing Is Not Entitled to Relief for 2013 and 2014**

Although the Court of Federal Claims has subject-matter jurisdiction to consider Ms. Wolffing's tax refund claims for 2013 and 2014, those claims fail on their merits.[18]  See id.

When a taxpayer files a timely claim for refund, as Ms. Wolffing did for 2013 and 2014, the amount of the refund is limited to "the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return."  I.R.C. § 6511(b)(2)(A).  Payments made via withholding credits are deemed paid on April 15 of the following year for calendar-year taxpayers.  Id. § 6513(b)(1).

Ms. Wolffing filed her 2013 tax return, which included her refund claim for that year, on October 24, 2017.  Due to the three-year look-back period described above, she was eligible to receive a refund of taxes paid from October 24, 2014, through October 24, 2017.  If she had received the automatic six-month extension of time to file her 2013 return, she would have been eligible to receive a refund of taxes paid within three years and six months preceding the filing of her refund claim, i.e., from April 24, 2014, through October 24, 2017.  Whether Ms. Wolffing had received the automatic extension, however, is immaterial.  The only payments she made towards her 2013 tax liability were made through wage withholdings.  Those amounts were deemed paid on April 15, 2014.  Accordingly, there were no tax payments eligible to be refunded when Ms. Wolffing filed her refund claim.  Even if she had received the extension, the maximum refund she can receive with respect to 2013 is zero.

Ms. Wolffing filed her 2014 tax return, which included her refund claim for that year, on October 11, 2017.  Due to the three-year look-back period described above, she was eligible to receive a refund of taxes paid from October 11, 2014, through October 11, 2017 (or from April 11, 2014, through October 11, 2017, if she had received the automatic extension).  As with 2013, the only payments she made towards her 2014 tax liability were made through wage withholdings.  Those amounts were deemed paid on April 15, 2015.  Accordingly, she was eligible to receive the entire $2,076 refund as indicated on her refund claim.  When the IRS processed her return on November 6, 2017, however, it applied the full amount towards her 2005 tax liability instead of issuing a refund.  See I.R.C. § 6402(a) (allowing the IRS to credit overpayments against any outstanding tax liabilities of the same taxpayer); Smith v. United States, 4 F. App'x 759, 761 (Fed. Cir. 2001) (unpublished per curiam decision) (explaining that I.R.C. § 6402(a) "grants broad authority to the IRS to credit overpayments to any tax liability").  Therefore, Ms. Wolffing is not entitled to further relief with respect to the 2014 tax year.  Her entitlement to those funds, if any, must be resolved through a refund claim with respect to 2005, the tax year to which the overpayment was applied.  (As stated above, however, the court lacks jurisdiction to consider her refund claim for 2005 as currently asserted.)

---

[18]  The court assumes (without deciding) that Ms. Wolffing substantially complied with the RCFC 9(m) pleading requirements for tax refund claims based on the information contained in the complaint, the exhibits attached to the complaint, and defendant's appendix, and because defendant did not file an RCFC 12(e) motion for a more definite statement.  See, e.g., Artuso v. United States, 80 Fed. Cl. 336, 337-39 (2008).

In sum, because Ms. Wolffing is not entitled to any further relief with respect to 2013 and 2014, she fails to state a claim upon which this court can grant relief for those years.

## IV.  CONCLUSION

The court has considered all of the parties' arguments.  To the extent not discussed herein, they are unpersuasive, meritless, or unnecessary for resolving the issues currently before the court.

The Court of Federal Claims lacks subject-matter jurisdiction to consider Ms. Wolffing's claims against individuals as well as her fraud, due process, and illegal collection claims.[19] Further, the court lacks subject-matter jurisdiction to consider Ms. Wolffing's tax refund claims for 1996 through 2012 and 2015 through 2017.  With respect to Ms. Wolffing's tax refund claims for 2013 and 2014, she has failed to state a claim upon which this court can grant relief.

Accordingly, the court **GRANTS** defendant's motion and **DISMISSES** the complaint. No costs.  The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Chief Judge

---

[19]  The dismissal of Ms. Wolffing's prior Tax Court petition was not based on the propriety (or lack thereof) of the IRS's actions to assess and collect taxes.  Her recourse, if any, is to file any outstanding tax returns, satisfy her unpaid tax liabilities, and then file a refund claim.